UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON JOY CAMPBELL,

        Plaintiff,                      CIVIL ACTION NO. 12-14432

    v.                            DISTRICT JUDGE JOHN CORBETT O'MEARA

                                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 13)

Plaintiff Shannon Joy Campbell challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 13). Judge John Corbett O'Meara referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

## I. RECOMMENDATION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

## II. DISCUSSION

### A. *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.   *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

-2-

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. REPORT

#### A. *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on May 4, 2010 and supplemental security income on April 22, 2010. In both applications, Plaintiff alleged she became disabled on December 30, 2009 (Tr. 19). After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ JoErin O'Leary, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 19-27). Plaintiff requested an Appeals Council review (Tr. 13). On August 31, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

#### B. *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged onset date in December of 2009 (Tr. 21).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bilateral carpal tunnel syndrome, degenerative disc disease,[1] fibromyalgia,[2] bipolar disorder, and anxiety (Tr. 21).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 22).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> light work[3] . . . except she could not lift and/or carry more than 10 pounds at a time. She would require a sit/stand option at will. [Plaintiff] could never kneel, crawl, or climb ladders, ropes, or scaffolds. She would be limited to no repetitive use of the hands. [Plaintiff] would be limited to simple tasks that require no interaction with the general public and [she] function[s] best in low stress work (meaning no more than occasional decision making or changes in the work setting).

(Tr. 23).

At step four, the ALJ found that Plaintiff did not have any past relevant work (Tr. 26).

At step five, the ALJ found Plaintiff was not disabled, because she could perform a significant number of jobs available in the national economy such as parts checker or machine tender (Tr. 26-27).

---

[1] "Degenerative disc disease is not really a disease but a term used to describe the normal changes of the discs in the spine as a person ages. The breakdown of the discs can result in back or neck pain, as well as osteoarthritis, herniated disc, or spinal stenosis." *See* http://www.webmd.com/hw-popup/degenerative-disc-disease (last visited September 10, 2013).

[2] Fibromyalgia is pain and stiffness in the muscles and joints. *See Dorland's Illustrated Medical Dictionary*, 711 (31st Ed. 2007).

[3] "[T]he full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10. Light work also involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

### C.     Administrative Record

#### 1.     Plaintiff's Hearing Testimony and Statements[4]

On her hearing date, Plaintiff was working 20-25 hours a week, providing in-home care to a 19 year old with Angelman syndrome (Tr. 39-40).[5] Plaintiff struggled getting to work, because she often did not feel well (Tr. 41).  At work, Plaintiff had difficultly staying in one spot: she had to either stand up or walk around (Tr. 41-42).  She could not perform full-time work because of her pain and inability to deal with large crowds, which made her anxious and nervous (Tr. 46, 49).

Plaintiff suffers from bilateral carpal tunnel syndrome and fibromyalgia throughout her body (Tr. 43).  Her pain level varied: on bad days (approximately four days a week), it was 10/10; on good days, 4-5/10 (Tr. 44).  Cymbalta helped control her pain (Tr. 43).

Plaintiff could not button her clothes; she had trouble standing and holding on to things; and, she could only lift up to 10 pounds, walk for 15 minutes, and sit for 10 minutes (Tr. 43-45). She needed to change positions every 10-15 minutes (Tr. 45). Plaintiff became angry easily (Tr. 46).  When not working, she stayed at home (Tr. 50).

Despite her limitations, Plaintiff was able to take care of her personal needs, make small meals, do "some" laundry, and "surface" clean (she experienced knots in her shoulders when she scrubbed the floor) (Tr. 50-51).  Plaintiff could not do any outdoor chores (Tr. 51).

---

[4] Plaintiff's testimony before the ALJ reflects her subjective view of her work history, medical condition, abilities and limitations.  It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

[5] "Angelman syndrome (AS) is a neuro-genetic disorder that occurs in one in 15,000 live births.  AS is often misdiagnosed as cerebral palsy or autism.  Characteristics of the disorder include developmental delay, lack of speech, seizures, and walking and balance disorders. Individuals with Angelman syndrome will require life-long care."  *See* http://www.angelman.org/understanding-as/ (last visited September 12, 2013).

**2. Vocational Expert**

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and vocational experience who does not have any past relevant work and is limited to light exertional work. The individual requires an option to sit or stand as needed to alleviate pain. The individual cannot climb ladders, ropes, or scaffolds; and, cannot kneel or crawl. In addition, the individual is limited to frequent handling and fingering and can have no interaction with the general public. The individual would function best in work requiring no more than occasional decision making or changes in the work setting. Finally, the individual is limited to simple tasks and cannot lift and carry more than 10 pounds (Tr. 54-55). The VE testified that such an individual could perform work at the unskilled, sedentary level as a parts checker, sorter, or machine attendant (Tr. 55).

In the second hypothetical, the ALJ changed the restriction of no frequent handling and fingering to no repetitive use of the hands (Tr. 55). The VE testified that the sorter position would be eliminated (Tr. 56).

In the third and fourth hypotheticals, the ALJ asked the VE to assume the individual would be off task 25 percent of the workday due to her inability to maintain concentration and attention, or had to lie down for two hours out of an eight-hour workday. In both cases, the VE testified that the individual would be precluded from work (Tr. 56).

**D. Plaintiff's Claim of Error**[6]

---

[6]Plaintiff implies that the ALJ erred in her application of the treating source rule; she refers to SSR 96-8, which states that an RFC must "always consider and address medical source

-7-

Plaintiff argues that the first and second hypothetical questions to the VE did not accurately account for her limitations. Plaintiff says the ALJ should have relied, instead, on the third and fourth hypothetical questions and concluded she was disabled, because the VE testified that such an individual would be precluded from work, if: (1) she would be off task 25 percent of the workday due to her inability to maintain concentration and attention; or, (2) she had to lie down for two hours during an eight-hour workday. In support of this claimed error, Plaintiff relies on her subjective limitations that: she cannot sit or stand for more than 10 minutes; cannot walk extended distances; has to frequently elevate her legs and lie down;[7] cannot do any outdoor chores and only few indoor chores; cannot interact with people; has limited concentration; cannot perform repetitive hand movements; and, drops things.

Plaintiff bears the burden to establish a prima facie case of disability. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). At step five, the burden then shifts to the Commissioner to show that Plaintiff has the capacity to perform work in the national economy. *Id*. This burden must be met with a finding supported by substantial evidence. *Parley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be shown through reliance on a VE's testimony in response to a hypothetical question, as long as the question accurately describes Plaintiff's physical and mental impairments and takes Plaintiff's limitations into account. *Id*. at

---

opinions," alongside 20 C.F.R. § 404.1527(d)(2), emphasizing the proper weight to be given to treating source opinions (Dkt. No. 8 at pp. 8-9). But, Plaintiff fails to substantiate any such argument. Accordingly, this Magistrate Judge deems this argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

[7]Plaintiff says the VE testified that she would be precluded from work, if she had to elevate her feet (Dkt. No. 8 at pp. 9-10). This was not the VE's testimony. The VE testified that a hypothetical individual would be precluded from work, if she had to *lie down* for two hours out of an eight-hour workday (Tr. 56). And, Plaintiff did not testify that she had to elevate her feet.

779-80.  Plaintiff's self-reported limitations may be used to establish disability in certain situations.  *Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Cagle v. Astrue*, 2012 WL 3201960, at *6 (E.D. Tenn. July 16, 2012):

> When a Plaintiff attempts to establish disability based on subjective complaints, she must provide objective medical evidence of an underlying medical condition that either confirms the severity of the alleged symptoms or indicates the condition reasonably could be expected to cause symptoms as severe as alleged. 20 C.F.R. § 404.1529; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity.  *See* 20 C.F.R. § 404.1529(c)(3).  "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."  *Walters*, 127 F.3d at 531.

Plaintiff fails to provide any objective medical evidence in support of her subjective complaints.  This Magistrate Judge, therefore, looks to other evidence to determine whether it supports Plaintiff's claim that she would be off task for 25 percent of the workday, or needed to lie down for two hours during an eight-hour workday.

### A.   Inability to Maintain Concentration and Attention

During an interview with B. Vowels of the Social Security Administration ("SSA"), the interviewer noted that Plaintiff had difficulty concentrating: Plaintiff "was tearful and seemed to be in alot[sic] of pan. [S]he gave good answers but did not feel good. [S]he moved around in her chair alot[sic]. [S]he stated the pain was unbearable" (Tr. 169-170).  In addition, Beth Mol, a single decision maker for the SSA, agreed that Plaintiff had trouble maintaining concentration and attention.  Ms. Mol found that Plaintiff was moderately limited in her ability to:  (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or in proximity to others without being distracted by them; (4) make simple

work-related decisions; and, (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 307-308). Still, Ms. Mol concluded that Plaintiff could perform simple, repetitive tasks (Tr. 308); and, the ALJ's RFC determination limited Plaintiff to simple tasks (Tr. 23). Plaintiff does not argue that her conditions caused greater limitations than those Ms. Mol found.

Further, Plaintiff's allegation that she has limited concentration is inconsistent with the function report completed by Hope Jones. Jones – Plaintiff's friend of 3 ½ years and with whom she spent time with 4-5 days a week, plus some weekends – reported that Plaintiff can pay attention for "hours," and she finishes what she starts (e.g., a conversation, chores, reading, watching a movie) (Tr. 188). Jones did check the box indicating that Plaintiff had trouble concentrating, but failed to explain how her condition affected her concentration (Tr. 188).

Finally, Plaintiff's function report states that although she has difficulty concentrating, she reported that the length of time that she can pay attention "depends on [her] level of interest" (Tr. 176). Plaintiff reported that she could finish what she started "to the best of [her] ability," she follows written instructions "fine," and she follows spoken instructions "pretty well" (Tr. 176).

This evidence does not support a finding that Plaintiff's limited trouble with maintaining concentration and attention would take her off task 25 percent of the workday; the ALJ's decision should not be disturbed on appeal.

> **B.** **Plaintiff's Need to Lie Down for Two Hours During an Eight-Hour Workday**

Plaintiff's allegation that she had to lie down for two hours during an eight-hour workday is discredited by her own testimony:

ALJ: Okay. Okay, and do you have to alternate with lying down, or can you just alternate with sitting and standing?

PLAINTIFF: No, I have to – well, I have to stretch often. And, you know, I can't stay in any particular, you know, laying[sic] down, sitting up. I have to, you know, just minimal. You know, 10-15 minutes, I have to move.

ALJ: Okay. Now when you get done with your 9:00 to 12:00 shift [caring for the 19 year old], do you have to go home and lay[sic] down–

PLAINTIFF: Yeah, I go home–

ALJ: Or are you okay?

PLAINTIFF: It depends on how bad my day, you know–

ALJ: On the day.

PLAINTIFF: How bad it is.

ALJ: Okay. Some of the days you'd have to go lay[sic] down?

PLAINTIFF: Yes.

ALJ: Okay, and how about after the longer shift, the 3:00 to 8:00?

PLAINTIFF: Yes, I go home, and I'm down.

ALJ: You basically go to bed after that?

PLAINTIFF: Yes.

-11-

\* \* \*

> ATTORNEY: If they wanted you to take care of this individual on a full-time, regular basis, you know, eight hours a day, five days a week, 40 hours a week versus the part-time you're doing now, would you be able to do that?
>
> PLAINTIFF: I wouldn't be able to do that.
>
> ATTORNEY: And why?
>
> PLAINTIFF: Because I'm so worn out after just the five hours. I can't–you know, more than five hours and more than, you know, the few days a week I do it's too much.

(Tr. 45-46, 51-52). The fact that Plaintiff may have to lie down *after* her shift does not necessarily mean she has to lie down for two hours *during* an eight-hour shift. The ALJ also accommodated Plaintiff's need to switch positions by including the option to sit and stand at will (Tr. 23). The ALJ's decision should not be disturbed on appeal.[8]

**IV. CONCLUSION**

---

[8] Plaintiff also makes the following argument:

> [t]he mere fact that she has not sought treatment more often should not act as a barrier as to say that her disability has not been present since December 30, 2009. If the reasoning for this denial of the disability being present since that date was solely due to the fact that she did not seek treatment more often, then this is clearly unconscionable. One should not be penalized by way of denial of federal funding merely because they[sic] may not have had sufficient funding or lack of insurance.

(Dkt. No. 8 at p. 12). A review of the ALJ's decision shows she did not summarily reject Plaintiff's allegations solely based on her inconsistent treatment history. Instead, the ALJ considered the objective medical evidence, other evidence in the record, and the VE's testimony to determine Plaintiff was not disabled (Tr. 21-27)

-12-

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                           s/Mark A. Randon
                                           Mark A. Randon
                                           United States Magistrate Judge

Dated: September 17, 2013

<u>*Certificate of Service*</u>

-14-

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 17, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*

*Case Manager for Magistrate Judge Mark A. Randon*